UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GROVER WICKERSHAM, an individual,

      Plaintiff,

      v.

EASTSIDE DISTILLING, INC., a Nevada
corporation, DOES 1-30,

      Defendants.

Case No. 3:20-cv-02182-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Currently pending is defendant Eastside Distilling, Inc. ("defendant" or "the company")'s
Motion to Disqualify Counsel and Revoke Pro Hac Vice Status (ECF 48) and Motion for
Protective Order (ECF 50). For the reasons stated, defendant's motion to disqualify is denied,
and defendant's motion for protective order is denied in part and granted in part to allow the for
the subpoenaed third parties who are the subject of plaintiff's outstanding subpoenas duces
tecum to produce responsive but nonprivileged documents to plaintiff, and to withhold
documents subject to attorney-client privilege or work product protection and produce a privilege
log.

## I.    Background

Plaintiff became a shareholder in the company in April of 2016. Mot. Disqualify 2, ECF
48. In July of 2016, plaintiff was appointed to serve on and chair the company's board of
directors. *Id.* In November of 2016, plaintiff became the company's chief executive officer, and

served in that role until May 10, 2019. *Id.* at 2–3. Central to the overall dispute, though only tangentially relevant to the current motions, is a rift that grew between plaintiff and some other company insiders about a marketing collaboration between the company and a country music singer. *See* First Am. Compl. ¶¶ 17–19, ECF 33. Plaintiff asserts that his removal as CEO and eventual termination from the board later in 2019 was in retaliation for his "whistleblowing" about certain aspects of that collaboration, among other things. *See id.* ¶¶ 97–100. Plaintiff filed a complaint in December of 2020, asserting claims of fraud in the inducement, breach of contract, breach of good faith and fair dealing, unlawful retaliation, failure to pay wages, defamation, elder financial abuse, and breach of fiduciary duty. First Am. Compl. ¶¶ 137, ECF 33.

After defendant moved to dismiss, and the court identified some deficiencies in plaintiff's claims, plaintiff filed the operative First Amended Complaint in January of 2022, and defendant answered in February of 2022. ECF 33, 37. On July 1, 2022, defendant served its First Set of Requests for Production to plaintiff. Mot. Disqualify 5, ECF 48. On December 30, 2022, plaintiff produced about 3,000 pages of documents to defendant, and defendant's subsequent review revealed that many of those documents were the company's "confidential and privileged information, including but not limited to correspondence between [defendant] and its outside counsel Perkins Coie (among others)," primarily consisting of emails and their attachments.[1] *Id.*; *see also* Loera Decl. Ex. 1, ECF 49-1. Plaintiff produced the contested documents from his personal email account as it was, according to plaintiff, defendant's policy to allow him and other individuals in the company to use their personal email accounts to conduct and

---

[1] For simplicity, the set of documents produced by plaintiff that are the subject of this dispute are referred to as the "contested documents."

communicate about company business. Wickersham Decl. ¶¶ 15–17, ECF 57. Apparently, plaintiff exclusively sent and received emails regarding company business using his personal grover@wickersham.com account, and the company arranged for all emails addressed to grover@eastsidedistilling.com to be automatically forwarded to plaintiff' personal email address. *Id.* ¶ 15.

Upon receiving copies of the contested documents that plaintiff possessed, defendant's counsel notified plaintiff's counsel that "there were grave concerns with [plaintiff's] document production related to his unlawful retention and use of [defendant's] privileged information." Mot. Disqualify 5, ECF 48. According to defendant, its Code of Conduct and Ethics Policy required plaintiff to "maintain the confidentiality of all information entrusted to them, and upon termination with the company any such information was required to be promptly returned to the company." *Id.* at 4. However, it does not appear that, up to that point, defendant had ever attempted to enforce the Code of Conduct and demand that plaintiff return any company documents in his possession after his position with the company was terminated. Wickersham Decl. ¶ 18, ECF 57.

After conferral, defendant's counsel determined that only plaintiff's *pro hac vice* counsel was involved in responding to defendant's request for production and thus was the only firm who "had the opportunity to review" defendant's privileged material and information. Mot. Disqualify 7, ECF 48. Defendant then moved to disqualify or revoke the *pro hace vice* status of attorneys Kevin Isaacson, Michael Ioannou, and Paula Nystrom, and their law firm, Ropers Majeski PC (the "Ropers firm"), based on the "substantial taint on these proceedings due to their violations of Oregon's ethics rules when they reviewed and used a substantial volume of

[defendant's] privileged documents and information [plaintiff] unlawfully retained following his termination from" the company. *Id.* at 2.

Defendant also moved for a protective order that would (1) require the parties to enter into an electronically stored information (ESI) protocol with an independent ESI vendor to determine if plaintiff still has possession of other company documents; (2) quash or limit subpoenas that seek privileged or confidential information from the company's former directors, employees, and legal counsel; (3) preclude plaintiff from using any of defendant's privileged documents that he took or otherwise subsequently obtains from defendant or affiliated individuals as a result of several outstanding subpoenas duces tecum; and (4) order plaintiff to return any privileged documents he took from defendant. Mot. Prot. Order 2, ECF 50.

The court held oral argument for the pending motions on June 2, 2023, and then ordered defendant to produce the contested documents for *in camera* review. Defendant subsequently produced the documents, and the court has reviewed them as necessary for the analysis below.

## II.    Motion to Disqualify

### A.    Legal Standard

"[D]istrict courts have the authority to supervise and discipline the conduct of attorneys who appear before them," and this includes the inherent authority to suspend or disqualify lawyers. *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999); *see also In re Snyder,* 472 U.S. 634, 643 (1985). This court's Local Rules require that all attorneys "admitted to general or special practice . . . must [b]e familiar and comply with the Oregon Rules of Professional Conduct and this Court's Statement of Professionalism." Local Rule 83-7. Thus, Oregon law applies. *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1136–37 (D. Or. 2019) ("When considering a motion to disqualify counsel in the Ninth Circuit,

at least when a district court has adopted by local rule the ethical code governing lawyers promulgated by the state in which that court sits, federal courts are directed to apply the law of the forum state and 'must follow the reasoned view of the state supreme court when it has spoken on the issue.' ") (quoting *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)).

The decision to disqualify counsel is "within the sound discretion of the court." *Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13–cv–01136–SI, 2014 WL 294549, at *17 (D. Or. Jan. 24, 2014) (citing *Gas-A-Tron of Az. v. Union Oil. Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976)); *see also Emery v. Aragon*, No. 6:22-cv-01495-MC, 2023 WL 1288983, at *1 (D. Or. Jan. 31, 2023). This discretion must be exercised with conflicting principles in mind: (1) "a client's right to chosen counsel," and (2) "the need to maintain ethical standards of professional responsibility." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). "[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored." *Quatama Park*, 365 F. Supp. 3d at 1137. Such motions are therefore subject to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). On the other hand, even with the "high standard of proof" that accompanies a motion to disqualify, "any doubts must be resolved in favor of disqualification" to preserve the public trust "both in the scrupulous administration of justice and in the integrity of the bar." *Smith v. Cole*, No. 3:05-cv-00372-AS, 2006 WL 1207966, at *2 (D. Or. Mar. 2, 2006), *report and recommendation adopted,* No. 3:05-cv-00372-AS, 2006 WL 1280906 (D. Or. Apr. 28, 2006) (citations omitted).

"Attorneys admitted *pro hac vice* are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, *pro hac vice* counsel cannot be disqualified

under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar." *Cole v. U.S. Dist. Ct. For Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004) (quoting *United States v. Collins,* 920 F.2d 619, 626 (10th Cir. 1990)).

### B.    Discussion

Defendant asserts that the Ropers firm and its attorneys should be disqualified for (1) failing to timely disclose that plaintiff possessed a substantial number of defendant's privileged and confidential documents; (2) making their own judgments about whether they were entitled to review defendant's privileged documents, instead of seeking a court order; and (3) reviewing and then using defendant's privileged documents in prosecuting plaintiff's case. *See* Mot. Disqualify 11–19, ECF 48. According to defendant, the Ropers firm's review and use of "substantial volume of [defendant]'s privileged documents and information" that plaintiff "unlawfully retained following his termination from" the company violated Oregon's ethics rules, in particular, Oregon Rule of Professional Conduct 4.4(b) and other principles stated in two Oregon State Bar Board of Governors Formal Opinions, Nos. 2005-150 and 2011-186. Mot. Disqualify 8-9, ECF 48.[2]

Oregon Rule of Professional Conduct 4.4(b) provides that "[a] lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent shall promptly notify the sender." On its face, however, that rule does not apply here, a point which defendant seems to concede. *See* Mot. Disqualify 10, ECF 48 (quoting Op. No. 2011-186) ("By its express terms, Oregon RPC 4.4(b) only applies in instances when

---

[2] The full text of these Formal Opinions can be found at https://www.osbar.org/_docs/ethics/ 2005-150.pdf and https://www.osbar.org/_docs/ethics/2011-186.pdf.

documents or electronically stored information is sent to Lawyer inadvertently. In instances when the delivery of materials is not the result of the sender's inadvertence, Oregon RPC 4.4(b) does not apply."). Plaintiff's counsel did not obtain the contested documents "inadvertently" as the rule requires. Plaintiff already possessed the contested documents, which consist entirely of email communications and their attachments that were sent to or sent by plaintiff during his tenure as CEO and executive chair of the company's board. *See* Loera Decl. Ex. 1, ECF 49-1; First Am. Compl. ¶¶ 12-13, 55, ECF 33. Moreover, there is no dispute that the contested documents and communications were sent to or sent by plaintiff exclusively to his personal email address, and that it was the company's policy to allow directors to use their personal email for conducting company business. Wickersham Decl. ¶¶ 15–16, ECF 57.

Neither ethics opinion that defendant cites directly controls here, either. Formal Opinion No. 2005-150 addresses whether Oregon RPC 4.4(b) requires a lawyer to return a privileged document that was inadvertently included in a response to a discovery request. Op. No. 2005-150 at 1. That is not the situation here—plaintiff's counsel did not obtain these documents through defendant's mistaken disclosure in responding to plaintiff's discovery request. The opinion also confirms the analysis above that Oregon RPC 4.4(b) only applies where the privileged document was inadvertently disclosed. Op. No. 2005-150 at 1–2. The opinion explains, though, that other rules and substantive law may "require a lawyer to return documents or to cease reading documents as soon as the lawyer realizes that they were inadvertently produced," and a lawyer who fails to follow those rules may be subject to discipline, including disqualification. *Id.* (citing Oregon RPC 3.3(a)(5) ("lawyer shall not knowingly: . . . engage in other illegal conduct"); Oregon RPC 3.4(c) (lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists");

Oregon RPC 8.4(a)(4) (prohibiting "conduct that is prejudicial to the administration of justice");
*Richards v. Jain*, 168 F. Supp. 2d 1195 (disqualifying counsel for retaining and using privileged
materials)).

Formal Opinion No. 2011-186 explains a lawyer's ethical duties if a lawyer "receives
documents or electronically stored information from a third party that may have been stolen or
otherwise taken without authorization from opposing party." Op. No. 2011-186 at 1. This
opinion also confirms that Oregon RPC 4.4(b) does not apply unless the documents were
received inadvertently, and specifically notes that "Oregon RPC 4.4(b) does not require [the
lawyer] to take or refrain from taking any particular actions with respect to documents that were
sent purposely, albeit without authority." *Id*. at 1–2. The opinion cautions, however, that other
rules may "limit" the lawyer's options or "direct" the lawyer's actions, and those regarding
documents subject to an adversary's or third party's attorney-client privilege is one particular
category worthy of attention: "A lawyer who reviews, retains, or attempts to use privileged
documents," the opinion explains, "may be subject to disqualification or other sanctions under
applicable court rules or substantive law." *Id.* at 3 (citing *Burt Hill, Inc. v. Hassan*, No. 2:09-cv-
01285-CB, 2010 WL 419433, at *1–5 & n 6 (W. D. Pa. Jan. 29, 2010); *Richards,* 168 F. Supp.
2d at 1195 (disqualifying counsel for retaining and using privileged materials); *In re Shell Oil
Refinery,* 143 F.R.D. 105 (E.D. La. 1992) (lawyer may not use confidential documents supplied
to him by opponent's employee); *Maldonado v. New Jersey,* 225 F.R.D. 120 (D.N.J. 2004)
(disqualifying plaintiff's counsel who reviewed privileged letter, received from unknown source,
and without permission incorporated it by reference in amendment to complaint)) (additional
citations omitted).

Defendant argues that "Oregon Ethics rules contemplate three possible ways in which a lawyer may receive privileged documents belonging to an opposing party: 1.) inadvertent production; 2.) documents obtained or retained by a client in a manner that constitutes a crime; or 3.) documents obtained or retained by a client improperly but not criminally." Mot. Disqualify 11, ECF 48. While it is true that the sources defendant cites *contemplate* the third situation, none of them establish a lawyer's ethical duties in that situation, nor do they provide any controlling standard for the court's analysis here. *See Evraz Inc., N.A. v. Cont'l Ins. Co.*, No. 3:08-cv-00447-AC, 2013 WL 6174839, at *4 (D. Or. Nov. 21, 2013) (explaining that it is "well-established Oregon law that legal ethics opinions are advisory only").

Both formal opinions cite to *Richards v. Jain*, and defendant in turn heavily relies on that case in seeking the Ropers firm's disqualification. Mot. Disqualify 14–19, ECF 48. The facts of *Richards* are similar to the present case in many ways. The plaintiff was a corporate vice president who sued his former employer. *Richards*, 168 F. Supp. 2d at 1202. Sometime in August of 2000, the plaintiff provided his lawyers a disk containing copies of approximately 100,000 emails between the plaintiff and other employees that had been stored on the plaintiff's work computer. *Id.* at 1198; *see also* Defs. Memo. ISO Mot. Disqualify 1, *Richards*, 168 F. Supp. 2d 1195, No. 2:00-cv-02140-TSZ, ECF 47. Many of the documents were clearly marked "Attorney-Client Privileged" and "contained information subject to [d]efendant's attorney-client privilege and were relevant to the case." *Richards*, 168 F. Supp. 2d at 1202. A paralegal ran a search on the disk that produced "thousands" of emails, which the paralegal then reviewed and classified as "relevant" or "not relevant" to the lawsuit the firm was preparing to file on the plaintiff's behalf. *Id.* The plaintiff filed suit in December of 2000, and at the plaintiff's

deposition in June of 2001, he revealed that that he had provided the disk to his lawyers. *Id.* at 1199.

The defendant moved to disqualify the plaintiff's law firm. *Id.* at 1198. The court granted the motion, primarily on the basis of the American Bar Association's Formal Ethics Opinion 94-382, which the court characterized as providing that "[a]n attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the documents to cease review of the documents, notify the privilege holder, and return the documents." *Id.* at 1200–01 (citing ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994)).[3] The court found that the law firm had violated this guidance in obtaining, reviewing, and using the privileged communications in the lawsuit without notifying the defendant's lawyers or seeking guidance from a court as to how to proceed with the disk of emails. 168 F. Supp. 2d at 1201–04.

---

[3] The *Richards* court did not provide a full text of ABA Formal Opinion 94-382. As explained more fully below, the ABA has subsequently withdrawn Formal Opinion 94-382, and removed it from its website archive of ethics opinions. *See* https://www.americanbar.org/groups/ professional_responsibility/publications/ethics_opinions/aba_formal_ethics_opinions_index_by_ issue_dates/. Thus, a full text of that opinion from an official source is elusive. The Texas Supreme Court in *In re Meador* purported to quote Formal Opinion 94-382 as follows:

> A lawyer who receive on an unauthorized basis materials of an adverse party that she knows to be privileged or confidential should, upon recognizing the privileged or confidential nature of the materials, either refrain from reviewing such materials or review them only to the extent required to determine how appropriately to proceed; she should notify her adversary's lawyer that she has such materials and should either follow instruction of the adversary's lawyer with respect to the disposition of the materials, or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court.

968 S.W. 2d 346, 349 (Tex. 1998).

Alternatively, the court also used a six-part test that had been recently adopted by the Texas Supreme Court to "aid in evaluating whether disqualification is called for when an attorney receives privileged information outside the normal course of discovery." *Id.* at 1205 (citing *In re Meador*, 968 S.W. 346, 351–52 (Tex. 1998)). The *Meador* court relied in part on ABA Formal Opinion 94-382 as a "guideline for disqualification," and then offered the following factors to consider in evaluating "all the facts and circumstances to determine whether the interests of justice require disqualification":

1) whether the attorney knew or should have known that the material was privileged;
2) the promptness with which the attorney notifies the opposing side that [the attorney] has received its privileged information;
3) the extent to which the attorney reviews and digests the privileged information;
4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;
5) the extent to which movant may be at fault for the unauthorized disclosure;
6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Meador*, 968 S.W. at 351–52. After applying the factors, the *Richards* court determined that disqualification was proper in part because plaintiff was a "highly placed executive" who was "in frequent communications with both in-house and outside legal counsel on numerous sensitive company-related legal matters," and had signed a nondisclosure agreement that purported to prevent plaintiff from disclosing any of the company's information for any reason. *Richards*, 168 F. Supp. 2d at 1208.

The persuasive value of *Richards* is not, however, as robust as defendant believes. For one, the ABA withdrew Formal Opinion 94-382 in 2006 in light of the new model ABA Model Rule of Professional Conduct 4.4(b). *See supra* note 3; ABA Comm. on Ethics and Professional

Responsibility, Formal Op. 06–440 (2006); *see also Kyko Glob. Inc. v. Prithvi Info. Sols. Ltd.*, No. 2:13-cv-01034-MJP, 2014 WL 2694236, at *2 (W.D. Wash. June 13, 2014) (rejecting argument for disqualification based on *Richards* because the case "appl[ied] an old version of the model ethical rules and an outdated ABA opinion"). The newer ABA Model Rule 4.4(b) is identical to Oregon's RPC 4.4(b), and ABA Formal Opinion 06-440 reflects the same analysis as the Oregon Ethics opinions cited above, i.e., that the rule only applies to inadvertent, not intentional, disclosures. *See also Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 6:16-cv-01282-JWB, 2017 WL 2831485, at *9 (D. Kan. June 30, 2017) ("[I]f the providing of the materials is not the result of the sender's inadvertence, Rule 4.4(b) does not apply.") (quoting ABA Formal Op. 06-440 (2006)). The first three factors of the *Meador* test specifically address portions of ABA Formal Opinion 94-382—the duty to examine for privilege, duty to notify the opposing party, and the duty to limit review—that are no longer part of the Model Rules or recognized by any formal opinion. Given that *Richards* is based in large part on the now-withdrawn Formal Opinion 94-382, its value as a guidepost for the court's analysis here is meager at best.

　　　The unique factual circumstances presented here, as well as guidance from other cases, counsel against disqualifying the Ropers firm as defendant requests. First, it is undisputed that defendant's policy allowed directors to use their personal email addresses for company business, that plaintiff used a personal email account for that purpose, and that the company's board members, employees, and outside counsel exclusively communicated with plaintiff using his personal email address. Opp'n Mot. Disqualify 28–29, ECF 55; Wickersham Decl. ¶¶ 15-16, ECF 57. This is distinct from cases like *Richards* where the documents were intentionally removed from a company's computer or email system by an individual in anticipation of

litigation, 168 F. Supp. 2d at 1208, or where an anonymous or unknown source sent an attorney privileged information from the opposing party. *Burt Hill*, 2010 WL 419433 at *1 ("Defendants obtained these documents from an anonymous source, in an un-labeled large manila envelope left outside Defendants' rented office space in Dubai.") (internal quotation marks omitted).

And the circumstances are very different than another case defendant cites from this district, where the plaintiff's lawyer was disqualified after the plaintiff in a wrongful termination suit "unlocked [her supervisor's] desk," stole an attorney-client privileged document discussing the reasons for her termination along with other confidential files, and provided copies of those documents to her attorney. Reply Mot. Disqualify 23, ECF 63 (citing *Furnish v. Merlo*, No. 3:93-cv-01052-AS, 1994 WL 574137, at *2 (D. Or. Aug. 29, 1994)). For one, plaintiff here actually authored a substantial number of the contested documents, and the court struggles to understand how and on what basis plaintiff would not be allowed to access or use a document that he wrote in prosecuting his own lawsuit against defendant. *See* Caldera Loera Decl. Ex. 1 at 1, 44, ECF 49-1. And whether explicitly, by forwarding company emails to his personal email, or implicitly, by communicating with him exclusively through that channel, defendant authorized plaintiff to receive the contested documents at his personal email account, which is outside of defendant's domain or computer system and thus outside of its control. *See* Wickersham Decl. ¶ 15 (asserting that defendant "arranged for all emails inadvertently sent to the grover@eastsidedistilling.com address to be delivered to my personal grover@wickersham.com account"). Defendant simply has not adequately explained on what basis the court should order plaintiff, whom defendant allowed to receive the contested documents, to now somehow purge both his own document archive and personal knowledge of the contested documents' contents.

13 – OPINION AND ORDER

Defendant argues that plaintiff violated the company's Code of Conduct in retaining possession of the contested documents in his personal email account after his termination in August of 2019. Mot. Disqualify 5, ECF 48. The Code of Conduct's provision regarding confidentiality states:

> In carrying out the Company's business, employees, officers, and directors may learn confidential or proprietary information about the Company or third parties. Employees, officers and directors must maintain the confidentiality of all information entrusted to them, except when disclosure is authorized or legally mandated. Confidential or proprietary information includes, for example, any nonpublic information concerning the Company, including its business, properties, financial performance, results or prospects, and any nonpublic information provided by a third party with the expectation or contractual agreement that the information will be kept confidential and used solely for the business purpose for which it was conveyed. Employees, officers and directors are required to secure from unauthorized access and public view documents under their control that contain confidential or proprietary information. When such information is discarded, appropriate steps must be taken to ensure proper and complete destruction.
>
> In addition, employees, officers, and directors are prohibited from taking confidential or proprietary information with them upon termination of employment with the Company or from using or disclosing such information for any purpose elsewhere, including with a different employer or company. Any confidential or proprietary information must be promptly returned to the Company upon termination of employment or affiliation with the Company.

Loera Decl. Ex. 3 at 4, ECF 49-1.

Plaintiff does not dispute that he did not return the contested documents to the company after his termination in 2019. Opp'n Mot. Disqualify 9, ECF 55. But neither does defendant meaningfully dispute that it never demanded that plaintiff return the contested documents until sometime in 2023, after plaintiff produced the contested documents from his personal email account. Reply Mot. Disqualify 12, ECF 63. As explained above, it was no secret that plaintiff used his personal email account for conducting company business during his tenure at the company, and defendant knew or should have known that plaintiff had maintained possession of

the contested documents after his termination. That again distinguishes this case from those like *Richards*, where the defendant-company did not know and could not have known that the plaintiff-employee had surreptitiously duplicated the entire contents of his work computer to give to his attorneys until the plaintiff revealed during his deposition that he had taken the files. 168 F. Supp. 2d at 1199–00. Disqualification is a drastic measure subject to "particularly strict judicial scrutiny." *Quatama Park*, 365 F. Supp. 3d at 1138 (quoting *Optyl Eyewear*, 760 F.2d at 1050). The record currently before the court suggests that defendant should have exercised more control over its documents, and should have been more vigilant in attempting to enforce its Code of Conduct and demand plaintiff return the contested documents. Disqualification of plaintiff's counsel is not an appropriate remedy to fix the problems that defendant's document retention and security practices helped to create.

Another factor counseling against disqualification here is at the core of the attorney-client privilege itself. The purpose of the privilege is "the promotion of the full disclosure of information by clients. Lawyers can act effectively only when fully advised of the facts by the parties whom they represent[.]" *State v. Jancsek*, 302 Or. 270, 274 (1986). Much of the focus in the briefing was on defendant's rights under the privilege. Opp'n Mot. Disqualify 10-22, ECF 55; Reply Mot. Disqualify 2–17, ECF 63. But plaintiff is also entitled to the benefits of legal representation and the privilege that comes with it. It is not disputed that as defendant's one-time CEO and board member, plaintiff was authorized to access privileged information about the company. When the relationship started to sour, plaintiff had the right to seek representation from a lawyer to protect his own interests, and as a part of that lawyer-client relationship, plaintiff should, and in fact must, be allowed to discuss with his own attorneys the full facts and circumstances surrounding the dispute with defendant. *See* Opp'n Mot. Disqualify 15, ECF 55

("Defendant cannot assert the privilege to preclude Plaintiff from disclosing communications with corporate counsel related to his reporting of alleged illegal conduct by [defendant] and his wrongful termination in retaliation of the same."); *Layer2 Commc'ns Inc v. Flexera Software LLC*, No. 4:13-cv-02131-DMR, 2014 WL 2536993, at *9 (N.D. Cal. June 5, 2014) ("In fact, [California] cases hold that a party or an employee of the party is *entitled* to disclose to the party's attorney all facts relevant to the lawsuit, including an ex-employer's confidential and privileged communications.") (emphasis in original); *Rutherford v. Palo Verde Health Care Dist.*, No. 5:13-cv-01247-JAK-SP, 2014 WL 12632901, at *10 (C.D. Cal. Apr. 17, 2014) (denying motion to disqualify where former executive-plaintiffs produced documents containing company-defendant's privileged materials because the documents "relate[d] to matters that are already within plaintiffs' personal knowledge"; "[s]urely they are permitted to share that knowledge with their own attorneys to the extent it relates to their claims in this case"); *cf.* Or. Evid. Code 511 (providing there is no waiver of attorney-client privilege if "the disclosure is itself a privileged communication").

Relatedly, there is a long line of California cases that have consistently held "a party cannot improperly disclose confidential information to one's own counsel in the prosecution of one's own lawsuit" because barring such discussions "would defeat the purpose of confidentiality, which is to promote full and open discussions between attorney and client." *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 844 (2002); *see also Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 302–04 (2001); *Preston v. City of Oakland*, No. 3:14-cv-02022-NC, 2015 WL 577427, at *4 (N.D. Cal. Feb. 11, 2015) (noting that California authorities "have found disqualification not warranted when attorneys obtained from their own client the opposing party's confidential or privileged information"). Disqualification is "inappropriate for mere

exposure to information by an attorney to confidential information," in part because the client

has the right to give new counsel the same information, "which would leave the adversary in the

same position as before." *Neal*, 100 Cal. App. 4th at 844.[4] That holds true for plaintiff here; he

had real-time access to and thus personal knowledge of the contested documents' contents, and

disqualifying some of his current attorneys would not change that fact or prevent plaintiff from

sharing this information with new counsel.

Relatedly, federal courts have affirmed the right of in-house counsel to use attorney-

client privileged information in bringing a lawsuit seeking to vindicate the lawyer's individual

rights against the company. *See Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 995 (9th Cir.

2009) (collecting cases). In those situations, trial courts are directed to "balance[e] the needed

protection of sensitive information with the in-house counsel's right to maintain the suit" by

using "sealing and protective orders, limited admissibility of evidence, orders restricting the use

of testimony in successive proceedings, and, where appropriate, in camera proceedings."

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 182 (3d Cir. 1997) (citing *Gen. Dynamics*

*Corp. v. Superior Ct.*, 7 Cal. 4th 1164, 1191 (1994)). Although, here, plaintiff is not in-house

counsel, the rationale and balancing forces are essentially the same given plaintiff's access to and

---

[4] That is not to say that the Roper's firm here acted in accordance with the standard of attorney
conduct as dictated by California law, under which an attorney "may not read a document any
more closely than is necessary to ascertain that it is privileged," and "once it becomes apparent
that the content is privileged, counsel must immediately notify opposing counsel and try to
resolve the situation." *Rutherford v. Palo Verde Health Care Dist.*, No. 5:13-cv-01247-JAK-SP,
2014 WL 12631844, at *5 (C.D. Cal. Apr. 17, 2014), *report and recommendation adopted,* No.
5:13-cv-01247-JAK-SP, 2014 WL 12633524 (C.D. Cal. June 4, 2014) (quoting *Gotham City*
*Online, LLC v. Art.com. Inc.*, No. 4:14-cv-00991-JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar.
13, 2014)). Violating that rule does not, however, necessarily require that the attorney be
disqualified from the case. *See id.* at *7 (finding that plaintiff's counsel "acted improperly with
respect to allegedly privileged information . . . in two respects," but that disqualification was not
warranted).

knowledge of defendant's privileged material. *See Rutherford*, 2014 WL 12632901 at *9

(denying motion to disqualify lawyer for plaintiffs who "were clearly permitted to access the

documents at issue during their employment," in part because "one or more plaintiffs is a party

to most of the communications the court saw during its in camera review").

Finally, although at least some of the contested documents here are obviously privileged,

defendant has not adequately explained the significance of the contested documents to this

litigation and what effect they may have on it. *See Richards*, 168 F. Supp. 2d at 1205, 1207-08

(analyzing "the significance of the privileged information; i.e., the extent to which its disclosure

may prejudice the movant's claim or defense, and the extent to which return of the documents

will mitigate that prejudice"); *McDermott Will & Emery LLP v. Superior Ct.*, 10 Cal. App. 5th

1083, 1120 (2017) ("[D]isqualification is proper where, as a result of a prior representation or

through improper means, there is a reasonable probability counsel has obtained information the

court believes would likely be used advantageously against an adverse party during the course of

the litigation."). In fact, defendant asserts that plaintiff's claims do not implicate or necessarily

rely on any of the privileged materials in plaintiff's possession, which suggests that the risk of

plaintiff's gaining an unfair advantage appears low, at least based on the record currently before

the court. *See* Reply Mot. Disqualify 15, ECF 63 ("Notwithstanding the lengthy, gratuitous, and

meandering background section of [plaintiff]'s First Amended Complaint, [plaintiff] asserts eight

(8) claims for relief, none of which include an allegation regarding any privileged

communication."); *contra U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-

GHK AGRX, 2013 WL 2278122, at *3 (C.D. Cal. May 20, 2013) (disqualifying counsel that

"not only used privileged materials to craft their claims, but incorporated verbatim content from

those materials in the pleadings").

This case is distinct from others where the contested document contained legal analysis of the opposing party for the claims in-suit. *See Furnish*, 1994 WL 574137 at *2 ("The memo, prepared by . . . in-house corporate counsel . . . , discusses the reasons for terminating [plaintiff's] position."). Defendant has not identified, nor has the court found during *in camera* review, any document that provided the plaintiff's attorney with a road-map to defendant's legal strategy in the pending litigation. *See Nesselrotte v. Allegheny Energy, Inc.*, No. 2:06-cv-01390-NBF, 2008 WL 2890832, at *6 (W.D. Pa. July 23, 2008) (denying motion to disqualify because, among other reasons, "there is no document in the hundreds of pages of documents removed by Plaintiff that even closely resembles the '[*Furnish*] Memorandum' in terms of relevance to the instant cause of action").

For all those reasons, defendant's motion to disqualify or revoke the *pro hac vice* status of the lawyers from the Ropers firm is denied. Instead, the parties are ordered to confer and work together under the existing stipulated protective order in this case to prevent the public disclosure of defendant's privileged information through court filings or otherwise, or seek guidance from the court if they are unable to agree. *See Gen. Dynamics*, 7 Cal. 4th at 1191 (encouraging courts to use protective orders or other tools to permit plaintiff privy to defendant's privileged information to "attempt to make the necessary proof while protecting from disclosure client confidences subject to the privilege"); *Preston*, 2015 WL 577427 at *4 ("[A]s other courts have noted, the parties could request or agree to employ measures designed to permit plaintiff to use confidential or privileged documents to pursue her claims while protecting against inappropriate disclosure.").

## III.    Motion for Protective Order

Defendant has also moved for a protective order:

- Requiring the parties to enter into a formal electronically stored information (ESI) protocol with an independent ESI vendor so that [defendant] may use a mirroring system to complete a privilege check through [plaintiff]'s records that include documents that were improperly taken from [defendant] and those that may be improperly acquired via subpoenas to [defendant]'s former directors, employees, and legal counsel (Perkins Coie and attorney Chris Hall);

- Quashing or limiting multiple subpoenas issued by [plaintiff] seeking confidential, proprietary, and privileged (attorney-client and/or work product) documents from [defendant]'s former directors, employees, and legal counsel;

- Precluding [plaintiff] from using the following as evidence in this case: any privileged documents he took from [defendant]; any privileged documents he subpoenaed from [defendant]'s former directors/employees; and any privileged documents from [defendant]'s legal counsel, Perkins Coie, and its lawyer, Chris Hall . . . ; and

- Ordering [plaintiff] to return any of the Privileged Documents that he improperly took from [defendant] and failed to return after his employment with [defendant] ended.

Mot. Prot. Order 2–3, ECF 50 (some organization and formatting modified).

### A.    ESI Protocol

Defendant's request to order the parties to enter into an ESI protocol is denied. The case defendant cited in support of the request for the ESI investigation is distinguishable on many of the same grounds as the other cases discussed above. *See* Mot. Prot. Order 9 (citing *Las Vegas Sands v. Eighth Jud. Dist. Ct.*, 130 Nev. 643, 645 (2014). The plaintiff in *Las Vegas Sands* surreptitiously downloaded approximately 40 gigabytes of data from the defendant's computer system, and then sued the defendant after he was terminated from his role as president and CEO of the company. 130 Nev. at 645. After the defendant discovered that the plaintiff had taken these documents and the plaintiff subsequently refused to return them, the defendant sought a protective order requiring the plaintiff to return the documents, and also filed a separate action

for theft or conversion. *Id.* at 645–46. The district court consolidated the motions and arguments regarding the contested documents, and eventually ordered the plaintiff to "turn over copies of the documents to an independent ESI vendor," allowed both parties "to review the documents and assert any privilege," and then conducted an in-camera review to resolve disputed privilege issues. *Id.* at 646–47.

No such protocol is needed here. Plaintiff has already given copies of the contested documents to defendant by producing them in response to defendant's request for production, and defendant has not offered any evidence suggesting that plaintiff is wrongly withholding further documents or has otherwise attempted to obfuscate the universe of documents in his possession. Nor has defendant justified the need to order an intrusive examination of plaintiff's personal computer or personal email account. Mot. Prot. Order 8–9, ECF 50. As explained, it was defendant's policy to allow plaintiff and other officers and directors to use their personal email addresses to conduct company business. There is no allegation that plaintiff took some other intentional action to remove documents from defendant's computers or email system, and therefore there is no basis to order a further investigation of plaintiff's personal computer or email account.

**B.    Return or Restricting Use of Contested Documents**

Defendant further relies on *Las Vegas Sands* in requesting an order requiring plaintiff to return the contested documents to defendant and an order preventing plaintiff from using the contested documents in this case. *See* Mot. Prot. Order 10–12, ECC 50. That request is denied. For the same reasons that case does not support an ESI protocol, it does not support an order requiring plaintiff to return all the contested documents or preventing plaintiff as a general matter from using the contested documents in this case, at least at this time and based on the record

currently before the court. As mentioned above, defendant has not identified any portion of

plaintiff's complaint that references or relies on purportedly privileged information. Given the

large number of documents at issue, the various purposes for which any one of the documents

was sent or other circumstances surrounding each communication, and the as-yet-unknown

reasons why any particular document may become relevant to the case, a blanket order either

allowing or disallowing plaintiff to use the contested documents would not be appropriate at this

juncture. Instead, the parties are ordered to work together under the terms of the existing

stipulated protective order to ensure that confidential or privileged information is not publicly

disclosed. *See Rutherford*, 2014 WL 12631844 at *8 (ordering the parties to enter a stipulated

protective order to avoid public disclosure of the defendant's privileged documents that the

plaintiffs obtained during course of employment with the defendant).

### C.    Quashal or Limitation of Subpoenas Duces Tecum

Finally, defendant seeks an order "[q]uashing or limiting multiple subpoenas issued by

[plaintiff] seeking confidential, proprietary, and privileged (attorney-client and/or work product)

documents from [defendant's] former directors, employees, and legal counsel[.]" Mot. Prot.

Order 2, ECF 50. Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that "the court for the

district where compliance is required must quash or modify a subpoena that . . . requires

disclosure of privileged or other protected matter, if no exception or waiver applies."[5] "A party

---

[5] Plaintiff's argument that defendant's motion to quash or limit the subpoenas should be denied as procedurally improper is not well-taken. Opp. Mot. Prot. Order. 10, ECF 59. Whether under Rule 26 or Rule 45, both of which defendant relied on in the present motion, the court has the authority to quash or limit a subpoena, or otherwise to enter a protective order limiting discovery. *See Glass Egg Digital Media v. Gameloft, Inc.*, No. 3:17-cv-04165-MMC, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (explaining uses of Rule 26 motions for protective order and Rule 45 motions to quash); Mot. Prot. Order 2, ECF 50 ("[Defendant] comes to this Court for an Order, pursuant to Fed. R. Civ. P 26(c) and 45(c)[.]").

generally lacks standing under Federal Rules of Civil Procedure Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Loop AI Labs Inc v. Gatti*, No. 4:15-cv-00798-HSG, 2016 WL 787924, at *2 (N.D. Cal. Feb. 29, 2016) (quotation and citation omitted). "The party who moves to quash a subpoena bears the burden of persuasion under Rule 45(c)(3)." *Id.* (citation omitted).

Plaintiff has served substantively identical subpoenas duces tecum to defendant's former directors, officers, and employees Jarrett Catalani, David Holmes, Larry Firestone, and Trent Davis, the law firm Perkins Coie, and defendant's outside general counsel Chris Hall. Mot. Prot. Order 3, ECF 50. The subpoenas contain the following requests:

- REQUEST FOR PRODUCTION NO. 1: Any and all DOCUMENTS and COMMUNICATIONS created in or after July 2018 CONCERNING WICKERSHAM.

- REQUEST FOR PRODUCTION NO. 2: Any and all DOCUMENTS CONCERNING any meeting or action of the board of directors of Eastside Distilling, Inc. ("Eastside") in or after July 2018.

- REQUEST FOR PRODUCTION NO. 3: Any and all COMMUNICATIONS created in or after July 2018 with any former or current director of Eastside, including, but not limited to, Trent Davis, Steve Shum, David Holmes, Jack Peterson, Mick Fleming, Patrick Crowley, and Matthew Szot, CONCERNING WICKERSHAM.

- REQUEST FOR PRODUCTION NO. 4: Any and all COMMUNICATIONS with John Rich and/or T.J. McDaniel CONCERNING WICKERSHAM created in or after July 2018.

- REQUEST FOR PRODUCTION NO. 5: Any and all COMMUNICATIONS created in or after July 2018 with any former or current officer, including, but not limited to, Larry Firestone, Robert Manfredonia, and Jarret Catalani, CONCERNING WICKERSHAM.

- REQUEST FOR PRODUCTION NO. 6: Any and all COMMUNICATIONS created in or after July 2018 with Perkins Coie CONCERNING WICKERSHAM, including, but not limited to, COMMUNICATIONS with

Christopher Hall, Tom Johnson, Stephen Feldman, and Molly Wilcox.[6]

- REQUEST FOR PRODUCTION NO. 7: Any and all COMMUNICATIONS CONCERNING WICKERSHAM created in or after July 2018 CONCERNING Eastside's 2019 annual meeting of stockholders.

- REQUEST FOR PRODUCTION NO. 8: Any and all COMMUNICATIONS CONCERNING WICKERSHAM created in or after July 2018 CONCERNING Eastside's Form 8-K filed on August 9, 2019.

- REQUEST FOR PRODUCTION NO. 9: Any and all DOCUMENTS or COMMUNICATIONS created in or after July 2018 CONCERNING any investigation by the Nasdaq Stock Market CONCERNING Eastside and/or WICKERSHAM.

Rigsby Decl. Exs. A and B, ECF 51-1, 51-2 (some organization and punctuation modified).

According to plaintiff, defendant also authorized or allowed other former officers, directors, and employees to conduct company business through their personal email accounts, a fact that, at least with regard to the subpoenaed individuals here, defendant does not seem to dispute. *See* Wickersham Decl. ¶ 16, ECF 57 ("It was [defendant]'s practice to allow its directors to use their personal email addresses for all [company] business. [Defendant's] standard practice was to send company information to directors at their personal email addresses."). And as with plaintiff, it appears undisputed on the current record that defendant did not attempt to enforce the Code of Conduct provisions and seek return of any company documents from directors, officers, or employees after their relationship with the company was over. *See id.* ¶ 19 ("[Defendant] has never requested or demanded that any former directors, officers or employees return any communications after their tenure with [the company] ended. This included several individuals

---

[6] Request for Production No. 6 in the subpoenas to Perkins Coie and defendant's outside general counsel Chris Hall seeks "[a]ny and all COMMUNICATIONS created in or after July 2018 with YOUR employees, associates, or partners, CONCERNING WICKERSHAM, including, but not limited to, COMMUNICATIONS with Christopher Hall, Tom Johnson, Stephen Feldman, and Molly Wilcox." Rigsby Decl. Ex. B at 12, ECF 51-2.

who used personal emails to conduct [company]-related business, including receiving [defendant]'s documents and information.").

Defendant asserts that "[g]iven the scope of the document requests in the subpoenas, it is anticipated that privileged and confidential documents will be among the records produced," and that the subpoenas should be squashed or limited, or the documents requested should be "subject to [an] ESI protocol . . . so that a privilege check may be conducted." Mot. Prot. Order 10, ECF 50. The attorney-client privilege in Oregon is governed by statute: Oregon Evidence Code ("OEC") 503, codified at Oregon Revised Statute § 40.225. *See Crimson Trace Corp. v. Davis Wright Tremaine LLP,* 355 Or. 476, 485 (2014) (en banc). A party may assert a claim of privilege if (1) the communication was between a "client" and the client's "lawyer," as those terms are defined in OEC 503; (2) the communication was a "confidential communication," as defined in OEC 503; and (3) the communication was "made for the purpose of facilitating the rendition of professional legal services to the client." *Crimson Trace*, 355 Or. at 486 (quoting OEC 503).[7]

---

[7] In a diversity action where state law governs the claims or defenses, questions of privilege are governed by state law. *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). Plaintiff's complaint references federal question jurisdiction and at oral argument, plaintiff's counsel mentioned that an issue related to the "stock legend" was a question of federal law. But there is no allegation in the First Amended Complaint regarding the "stock legend" issue, and given that plaintiff's eight asserted claims, including fraud in the inducement, breach of contract, and defamation, all sound in state law, the starting point for the analysis is Oregon law regarding privilege. *See* First Am. Compl. ¶¶ 76–137, ECF 33. The parties agreed at oral argument, however, that the analysis of privilege was largely, and at least preliminarily, the same under either Oregon or federal law. *See also NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY, 2019 WL 4750251, at *1 (D. Or. Sept. 27, 2019) ("The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. Indeed, the axiom that 'every man knows the law' presupposes that everyone can find it out by consulting a lawyer, before being hauled into court for violating the law.") (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).

The subpoena requests are not aimed exclusively at privileged communications, and there is a substantial likelihood that the subpoenaed third parties possess at least some responsive documents not subject to any claim of privilege by defendant. For example, communications solely among former directors are not, at least as a general matter, privileged because those communications are not between the client and its lawyer. *See* Request No. 3, Rigsby Decl. Ex. A at 11, ECF 51-1. Defendant has not offered any authority that supports either allowing the belated attempt to exert control over its documents based on the terms of the company's Code of Conduct, or otherwise preventing the subpoenaed third parties from producing documents and communications that were, by company practice or policy, sent to individual email accounts outside of the company's control. Therefore, to the extent the subpoenaed third parties have responsive, non-privileged documents in their possession, custody, or control, those documents shall be produced. *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (D. Or. 2015) ("The Federal Rules of Civil Procedure require a party served with a subpoena for records to produce those records that are in its possession, custody, or control.") (quoting *In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999)).

It is clear though that some of the requests seek privileged communications. While not conclusively deciding at the moment that all communications between defendant and the law firm Perkins Coie or the company's outside general counsel Chris Hall are actually privileged, it is no stretch to assume that many would be. *See* Rigsby Decl. Ex. B, ECF 51-2. And given the contents of the documents in plaintiff's possession that were produced *in camera*, it is also likely that at least some of the subpoenaed third parties have emails in their possession that are ostensibly privileged communications between the company's officers and directors and the

company's lawyers. It is not appropriate at this time, however, to determine whether those

communications are actually privileged, and if so, whether plaintiff is entitled to obtain them

through discovery based on defendant's waiver of the privilege or some other reason. *See* Mot.

Prot. Order 10, ECF 50; Opp'n Mot. Prot. Order 5–8, ECF 59. For one, the universe of

potentially privileged documents that the subpoenaed third parties may possess is unknown, as

are the specific facts surrounding defendant's business practices, document retention, or other

issues discussed here with regard to the subpoenaed third parties. The court declines to make

sweeping rulings on important issues of privilege and waiver based on such uncertainties.

      Since the subpoenaed third parties likely have responsive, non-privileged documents in

their possession, custody, or control, the motion to quash the subpoenas is denied. The court

recognizes that some of the documents possessed by the subpoenaed third parties may be subject

to defendant's claims of privilege or work product protection. Therefore, the motion to limit the

subpoenas is granted to allow the third parties to withhold documents based on an objectively

reasonable assertion of attorney-client privilege or attorney work product protection. *See Loop AI

Labs*, 2016 WL 787924 at *6 (denying motion to quash but allowing subpoenaed third party to

withhold documents and produce a privilege log). If any of the subpoenaed third parties withhold

any documents based on privilege or work product, they shall promptly produce a privilege log

that makes a prima facie showing that the materials are privileged by identifying "(a) the

attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on

the document to have received or sent the document, (d) all persons or entities known to have

been furnished the document or informed of its substance, and (e) the date the document was

generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.

1992). Plaintiff will then have the opportunity to challenge those claims to privilege, if any, through the usual motions practice.

## ORDER

Defendant's Motion to Disqualify Counsel and Revoke *Pro Hac Vice* Status (ECF 48) is denied. Defendant's Motion for Protective Order (ECF 50) is granted in part and denied in part as explained in this opinion.

DATED September 14, 2023.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge

28 – OPINION AND ORDER